1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ENRIQUE PAEZ,                              No.  2:21-cv-1920 DJC AC

12                 Plaintiff,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   AKIMA SUPPORT OPERATIONS LLC,

15                 Defendant.

16

17        Before the undersigned are cross-motions for summary judgment (ECF Nos, 15 and 22)

18   referred for findings and recommendations by District Judge Daniel J. Calabretta.  ECF No. 31.

19   For the reasons set forth below, it is recommended that plaintiff's motion for summary judgment

20   (ECF No. 15) be DENIED and that defendant's motion for summary judgment (ECF No. 22) be

21   GRANTED.

22                    I.      Factual and Procedural Background

23        In the complaint, initially filed in the Superior Court of the State of California for the

24   County of San Joaquin, plaintiff alleges that he was hired by defendant on January 7, 2019, as an

25   automotive worker.  ECF No. 1-1 at 7.  Plaintiff alleges that after taking several medically

26   prescribed periods of disability, he was wrongfully terminated.  Id. at 8.  Plaintiff asserts six

27   causes of action: (1) disability discrimination in violation of Government Code §12940(a); (2)

28   failure to accommodate in violation of Government Code §12940(m); (3) failure to engage in a

good faith interactive process in violation of Government Code §12940(n); (4) retaliation in violation of Government Code §§12940(h), (i), and (m); (5) failure to prevent and remedy discrimination and retaliation in violation of Government Code §12940(k); and (6) wrongful termination in violation of public policy.  Id. at 8-17.

This case was removed by defendant to federal court on October 15, 2021, on the bases of diversity jurisdiction (28 U.S.C. §1332(a)) and federal enclave jurisdiction (28 U.S.C. §1331).  ECF No. 1 at 6-7.  On December 14, 2021, the parties submitted a joint status report indicating jurisdiction and venue are uncontested.  ECF No. 7 at 2.  Plaintiff filed a motion for summary judgment on August 11, 2022.  ECF No. 15.  Defendant filed an opposition and cross-motion for summary judgment on October 4, 2022.  ECF No. 22-1.  Plaintiff submitted a reply brief on October 18, 2022.  ECF No. 24.  Defendant submitted a reply brief on October 25, 2022.  ECF No. 26.  The submitted motions were referred to the undersigned for findings and recommendations on October 25, 2024.  ECF No. 31.

## II.      Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." <u>Celotex</u>, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u>

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," <u>Anderson</u>, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" <u>T.W. Elec. Service, Inc.</u>, 809 F.2d at 630 (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968)).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Matsushita</u>, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." <u>Walls v. Cent. Costa County Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>See</u> <u>Richards v. Neilsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

3

demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

### III.   Statement of Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence. Plaintiff's statement of undisputed facts is located at ECF No. 15-2 and is supported by a compendium of evidence located at ECF No. 15-3. Defendant's statement of undisputed facts is located at ECF No. 22-2 and is supported by declarations and evidence attached at ECF No. 22-3 through ECF No. 22-13. Plaintiff's response to defendant's statement is located at ECF No. 24-1.

Defendant Akima Support Operations, LLC ("Defendant" or "ASO") is a private company that contracted with the United States Department of Defense, Defense Logistics Agency for an operations and maintenance contract at the government-owned Tracy Defense Distribution Depot in Tracy, California. ECF No. 24-1 at 2. The Human Resources department ("HR") provides support to management for training, termination, and other issues. Id. at 3. When an employee needs a leave of absence or any sort of disability-related accommodation, he or she works with the Reed Group, a third-party administrator, to complete the appropriate paperwork. Id. The Reed Group reviews medical certifications to determine eligibility for leave and works with ASO's management for determinations on requested accommodation. Id.

At the time relevant to this case, Project Manager Thomas Walburn ("Walburn") was responsible for managing ASO's contract with the Department of Defense and its operations at the Tracy Defense Distribution Depot. Paez Dep. at 26:3-6, 35:19-24; Walburn Dep. at 9:4-8. The contract provided for, among other things, mechanical repair and preventative maintenance of government vehicles and equipment, with time mandates for the completion of certain tasks, including two days for preventative maintenance and five days for repairs. Paez Dep. at 27:11-

4

18, 40:2-8; Walburn Dep. at 13:12-18, 33:17-19.  If ASO misses a deadline, the Department of Defense issues of a "non-conformance report," which details the circumstances under which ASO failed to comply with the relevant contractual provision(s).  ECF No. 24-1 at 4, Walburn Decl. at ¶ 4 (ECF No. 22-11).  The Department of Defense considers these reports during the re-bid process, which occurs every five years.  Id.  ASO's budget provides for a specified headcount, such that Walburn and other managers are unable to hire additional employees or open requisitions for non-vacant roles.  ECF No. 24-1 at 5, Walburn Decl. at ¶ 6.  During the relevant period, ASO employed four skilled mechanics who performed complex repairs, and four automotive workers who assisted the mechanics and performed less-complex repairs and preventative maintenance tasks such as oil changes and tune-ups.  Paez Dep. at 35:1-12; Walburn Dep. at 30:16- 20, 75:19-76:9.

Paez was hired by ASO as an automotive worker and began work on January 7, 2019.  Paez Dep. at 27:15-18, 29:14-20.  Paez's supervisor was Brian Garcia, who was the Equipment Maintenance Supervisor for ASO during the relevant period and was in charge of scheduling the mechanics and automotive workers.  Garcia Decl. ¶¶ 1, 4; Paez Dep. at 29:17-20.  Most of the mechanics and automotive workers worked a day shift; ASO also staffed at least two employees on a 'swing' shift and a graveyard shift for coverage and safety reasons.  Id. at ¶ 5.  Garcia reported to Randy Craig, Deputy Project Manager, who reported to Walburn.  ECF No. 24-1 at 5-6.

Paez was diagnosed with major depressive disorder in approximately 2016 by his primary care physician.  Paez Dep. at 49:7-18.  Paez sought therapeutic treatment through a counselor and took multiple medications.  Because his condition worsened, he sought medical treatment through psychiatric specialists Dr. Mark Hessenthaler and Dr. Karl Lanocha.  ECF No. 24-1 at 6.  After his January 2019 hire, Paez requested a leave of absence from ASO beginning August 29 through September 30, 2019 for inpatient treatment and leave related to his depression.  Paez Dep. at 41:15-24; Thomas Decl. ¶ 8.  Paez requested this leave via the Reed Group.  Paez Dep. at 42:4-6; Thomas Decl. at ¶ 8.  In 2019, Paez was not yet eligible for leave under the Family Medical Leave Act ("FMLA"); thus, he was granted a leave of absence as an accommodation under the

Americans with Disabilities Act ("ADA") and the Fair Employment and Housing Act ("FEHA"). Thomas Decl. ¶ 8. Paez sought an extension of his leave, which was granted, through October 23, 2019 as further accommodation. Paez Dep. at 41:15-17; Thomas Decl. ¶ 8. In addition, Paez was granted an accommodation in the form of approved intermittent leave from his October 23, 2019 return through January 6, 2020. Paez Dep. at 46:9-13; Thomas Decl. at ¶ 8.

In mid-2020, via the Reed Group, Paez requested a second period of continuous leave from June 11 through June 28, 2020, which was approved under the FMLA and the California Family Rights Act ("CFRA"). Paez Dep. at 42:14-16, ECF No. 22-4 at 58 (Certification of Health Care Provider); Thomas Decl. at ¶ 8. Paez requested an extension of his FMLA leave through July 12, which was approved. Paez Dep. at 42:14-16; Thomas Decl. at ¶ 8. Paez was granted additional intermittent leave through December 9, 2020. Paez Dep. at 51:17-52:4; Thomas Decl. at ¶ 8. Plaintiff's condition varied over time. Whelan Opp. Decl., Exh. 3 (Hessenthaler Depo. Vol. 1) at 21:10-12, 30:4-6, 31:1-3, Exh. 4 (Hessenthaler Depo. Vol. 2) at 11:22-12:1, 17:11-19, 30:3-24, 32:23-33:13; Bates Nos. D-1289-1311 (sealed); Paez Opp. Decl. ¶¶ 3, 6, 8.

In or around November of 2020, Paez had a conversation with his direct supervisor, Garcia, in which Paez shared information about his diagnosis; Garcia was sympathetic and shared that he had faced a similar issue in his own family. Paez Dep. at 56:1-20, 57:10-12. A week or two after that conversation, Paez requested another period of medical leave of absence from November 3, 2020, seeking continuous through January 6, 2021. Paez Dep. at 43:2-4; Thomas Decl. at ¶ 8. Paez's leave was approved under the FMLA/CFRA through December 22, 2020. Paez Dep. at 43:2-4, 51:9-12, 52:14-18; Thomas Decl. at ¶ 8. Paez was approved for additional continuous leave through January 6, 2021, under the ADA/FEHA as an accommodation. Paez Dep. at 52:19-23; Thomas Decl. at ¶ 8.

Paez's condition was severe. Because standard pharmaceutical and therapeutic treatments were not working, in late 2020 Paez underwent transcranial magnetic stimulation ("TMS"), a procedure used for treatment-resistant depression. Hessenthaler Dep. I at 8:18-20; Paez Dep. at 54:23-55-19. TMS is a noninvasive treatment that uses a magnetic coil to target the dorsolateral

prefrontal cortex, where "depression sits" in the brain.  Hessenthaler Dep. I at 8:21-19:7; Paez Dep. at 55:13-19.  A series of TMS generally consists of treatment five days a week for six weeks, then tapered over three weeks for a total of 36 sessions.  Hessenthaler Dep. I at 8:21-9:7.  Paez completed 36 rounds of TMS on or about December 30, 2020.  Hessenthaler Dep. II at 14:21-25, Bates D- 1307¬1311; Paez Dep at 70:15-22.

On January 4, 2021, Paez's doctor determined he was unable to return on the estimated date and Paez requested additional accommodation in the form of an extension of his continuous leave until a return-to-work date of March 1, 2021.  Paez Dep. at 53:6-14; Crow Decl., Attachment E, Deposition of Dr. Mark Hessenthaler, Volume II ("Hessenthaler Dep. II") at 14:18-15:10, 16:9-24.  In completing the leave request medical certification form for the 2021 extension, Dr. Hessenthaler affirmed that Paez was "unable to perform any of [his] essential job duties" and was "unable to complete all functions during [his] absence."  Hessenthaler Dep. II at 16:25-17:7, Ex. 5 (Certification of Health Care Provider, p. 3 at ECF No. 22-8 at 26).  Dr. Hessenthaler testified that Paez could not work at all during that period he was on leave, and his plan was to continue his medical leave from work.  Hessenthaler Dep. II at 18:1-4, Ex. 5 at 3.  Dr. Hessenthaler completed an accommodation request medical form, in which he confirmed that Paez had several major life activities that were impaired, and restricted his ability to perform his job duties, including caring for himself, concentrating, eating, interacting with others, learning, sleeping, and working.  Paez Dep. at 62-63; Hessenthaler Dep. II at 18:1-20, Ex. 5 at 9.  At that time, Dr. Hessenthaler estimated that the earliest Paez would be able to return was March 1, and though he confirmed there is never any guarantee, he believed there was a "higher likelihood" that this return date would work given Paez's response to treatment.  Hessenthaler Dep. II at 17:11-14.

Paez processed his leave and accommodation requests through the Reed Group.  Paez Dep. at 43:8-10, 53:24-54:8, 55:7-12, 55:20-56:20.  The Reed Group contacted HR and management. Grady Dep. at 15:20-16:15, 66:1-13, Walburn Dep. at 72:8-15, 86:20-23.  Walburn denied the request for additional continuous leave.  Walburn Dep. at 17:2-18.  Paez's employment was terminated on January 22, 2021; he was advised at that time that he was eligible for rehire.

1   Paez Dep. at 12:18-21; ECF No. 22-4 at 62 (Termination Letter); Walburn Dep. at 23:14-17.  The

2   decision to end Paez's employment was made by Walburn, and approved by Ret Grady

3   ("Grady"), the Senior Director of Human Resources ("HR") Operations.  Walburn Dep. at 14:7-

4   10; Grady Dep. at 21:10-22:1.  Walburn explained that had Paez been able to return on January

5   22, he would not have been discharged at all.  Walburn Dep. at 46:10-20, 47:1-4.  Paez did not

6   apply for re-hire.  Paez Dep. at 66:24-68:9.

7           Paez's last day of work was October 31, 2020, and his FMLA leave beginning November

8   3, 2020 was approved based on the medical certification completed by his treating psychiatrist,

9   Dr. Hessenthaler.  Paez Dep. at 46:9-21; Hessenthaler Dep. II at 11:15-22.  Dr. Hessenthaler's

10  certification expressly stated that Paez was "unable to complete all functions during absence."

11  Hessenthaler Dep. I at 12:6-19, 33:8-15; Ex. 10 (FMLA Certification of Healthcare Provider).

12  Paez agreed with his doctor's assessment that he was unable to perform his job at that time.  Paez

13  Dep. at 47:23-48:2.  The certification described Paez's condition, major depressive disorder, as

14  chronic, "recurrent severe."  Paez Dep. at 47:23-48:2; Hessenthaler Dep. I at 20:1-7.  At the time

15  he completed the certification form, Dr. Hessenthaler estimated Paez to need leave through

16  January 6, 2021, with intermittent leave for recurrences to follow for one year.  Hessenthaler Dep.

17  II at 11:22-12:1.

18          By his and his doctor's explanation, Paez received State of California Economic

19  Development Department ("EDD") benefits and remained disabled—that is, unable to work—

20  through and beyond October 2021, at which point Paez indicated that his EDD benefits expired.

21  Paez Dep. at 18:11-19.  During his periods of leave, Paez was completely unable to work, not

22  only in his automotive worker role, but in any job.  His doctor agreed with this assessment.  Paez

23  Dep. at 17:2-9, 19:1-5; Hessenthaler Dep. I at 21:23-22:1.  At a medical visit on April 27, 2021,

24  Paez's EDD disability was extended through June 1, 2021.  Hessenthaler Dep. II at 20:1-21:18.

25          Paez began Esketamine treatments in May 2021, after his termination from ASO, and his

26  EDD disability was again extended through July 6, then August 16, and again through October, at

27  which point his one-year eligibility for such benefits expired.  Hessenthaler Dep. II at 23:6-10;

28  Paez Dep. at 16:9-11; 70:23-71:5.  Esketamine is nasal-spray administered treatment that is used

for treatment-resistant depression, usually for patients who have gone through many medication trials.  Hessenthaler Dep. I at 8:18-20, 9:10-16.  Esketamine is typically administered twice per week for four weeks, then weekly or biweekly, as needed to get a patient into remission.  Hessenthaler Dep. I at 9:18-22.  Esketamine has a rapid onset response and is administered in a clinical setting for safety reasons because of the intense potential side effects including changes in blood pressure, dissociative response, and risk of psychosis.  Hessenthaler Dep. I at 9:10-18; Hessenthaler Dep. II at 21:2-14; Paez Dep. at 71:4-8.  By October, Paez was expected to taper the Esketamine treatments, by which point his provider hoped to spread the frequency out from twice per week to eventually once per month.  Hessenthaler Dep. II at 23:23-25:11, Bates D- 1045-1049.

As of Paez's medical appointment on August 11, 2021, Dr. Hessenthaler had not cleared Paez to return to work.  Hessenthaler Dep. II at 24:7-25:25, 23:23-25:11; Paez Dep. at 19:1-5.  Paez's Esketamine treatments continued through early 2022.  Paez Dep. at 70:23-71:5; Hessenthaler Dep. II at 27:16-21, Bates D-779-780.  Paez's medical records from his August 24, 2021 appointment reflect his own report that he was in a "long-standing pattern" in which he would feel better for "several weeks or even a couple of months, but then his mood inexplicably worsens to the point where he [was] barely able to function."  Dr. Hessenthaler agreed with this assessment and had observed similar patterns.  Hessenthaler Dep. II at 26:5-27:12.  The medical notes indicate that Paez's condition involved "significant worsening without clear precipitant," that is, significant worsening of symptoms with no clear cause.  Hessenthaler Dep. II at 27:2-12, Bates D-1031.  Paez continued to be under a doctor's care, attending therapy and receiving Esketamine treatments, through February 2022.  Hessenthaler Dep. II at 27:16-21; Paez Dep. at 70:23-71:5.

Paez readily admits that he was completely unable to work from the time that he requested leave in November 2020 through early 2022—over a year after the date Dr. Hessenthaler indicated that he would be able to return to work.  Paez Dep. at 17:7-16, 19-1-5.  In February 2022, Paez's providers began to suggest that he could begin "assimilating" back into a normal life, and that is when he began job hunting.  Paez Dep. at 20:16-24; Hessenthaler Dep. II at 28:11-

9

1    25.  Paez expressly denied that anyone at ASO ever made negative or derogatory comments to

2    him regarding his condition or his leave, nor were there any such comments on the call informing

3    him of his discharge.  Paez Dep. at 67:6-13

4                                    **IV.    Analysis**

5              Before the court are cross-motions for summary judgment.  Plaintiff seeks summary

6    judgment that (1) defendant failed to engage in a timely, good faith, interactive process in

7    violation of the California Fair Employment and Housing Act ("FEHA"); (2) that defendant

8    cannot succeed on the defense of undue hardship; and (3) that defendant cannot succeed on the

9    defense of business necessity.  ECF No. 15 at 2-19.  Defendant moves for summary judgment in

10   its favor on all claims.  ECF No. 22-1.

11     A.  Fair Employment and Housing Act

12             California's FEHA prohibits employers from discriminating against employees on the

13   basis of physical or mental disability.  Faust v. California Portland Cement Co., 150 Cal. App. 4th

14   864, 886 (2007).  A prima facie case for disability discrimination under FEHA based on grounds

15   of disability requires that the plaintiff: (1) suffered from a disability; (2) could perform the

16   essential duties of the job with or without reasonable accommodations, i.e., he was a "qualified

17   individual;" and (3) was subjected to an adverse action because of the disability.  McCarthy v.

18   R.J. Reynolds Tobacco Co., 819 F. Supp. 2d 923, 934 (E.D. Cal. 2011); Ravel v. Hewlett–

19   Packard Enter., Inc., 228 F. Supp.3d 1086, 1095 (E.D. Cal. 2017).  "Since FEHA is an anti-

20   discrimination law modeled after the federal [ADA], courts analyze FEHA claims under the

21   burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04

22   (1973)."  Cenis v. WinCo Holdings, Inc., No. 1:17-cv-00863-DAD-JLT, 2018 WL 2412324, at

23   *4, 2018 U.S. Dist. LEXIS 89301 (E.D. Cal. May 29, 2018), aff'd, 787 F. App'x 947 (9th Cir.

24   2019).  On summary judgment, plaintiff bears the burden of establishing a prima facie case; if a

25   prima facie case is established, the burden shifts to the employer to offer a legitimate, non-

26   discriminatory reason for the discharge.  Id.  The plaintiff must then offer evidence that the stated

27   reason is pretextual, or evidence that the employer acted with a discriminatory animus.  Id.

28   ////

                                        10

Relevant here, FEHA makes it unlawful "[f]or an employer, because of the … physical disability, mental disability, [or] medical condition … of any person … to discharge the person from employment."  Cal. Gov. Code § 12940(a).  It also is unlawful:

> "For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship, as defined in subdivision (u) of Section 12926, to its operation."

Cal. Gov. Code § 12940(m)(1).  Further, it is unlawful:

> "For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

Cal. Gov. Code § 12940(n).  Each of the three foregoing unlawful employment practices is a separate violation of FEHA.  Cal. Gov. Code § 12940; <u>Zamora v. Security Industry Specialists, Inc.</u>, 71 Cal.App.5th 1, 39 (2021).

FEHA defines several terms that are used in Cal. Gov. Code § 12940, supra.  An "employer" subject to FEHA "includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly."  Cal. Gov. Code § 12926(d).  "Mental disability" includes "[h]aving any mental or psychological disorder or condition … that limits a major life activity."  Cal. Gov. Code § 12926(j)(1).  This is defined to include any disorder or condition that "without regard to mitigating measures, such as reasonable accommodations," "makes the achievement of the major life activity" – such as his ability to work – "difficult."  Cal. Gov. Code § 12926(j)(1)(A)-(C).  A "known" disability under FEHA is one "of which the employer has become aware, whether because it is obvious, the employee has brought it to the employer's attention," or by other means.  <u>Gelfo v. Lockheed Martin Corp.</u>, 140 Cal.App.4th 34, 61 fn.21 (2006).

////

////

11

1        a.  Disability Discrimination (Government Code §12940(a))

2        Defendant moves for summary judgment in its favor on plaintiff's FEHA disability

3    discrimination claim, arguing that plaintiff does not state a prima facie case. ECF No. 22-1 at 8.

4    A prima facie case for disability discrimination under FEHA based on grounds of disability

5    requires that the plaintiff: (1) suffered from a disability; (2) could perform the essential duties of

6    the job with or without reasonable accommodations, i.e., he was a "qualified individual"; and (3)

7    was subjected to an adverse action because of the disability. McCarthy v. R.J. Reynolds Tobacco

8    Co., 819 F. Supp. 2d 923, 934 (E.D. Cal. 2011). Defendant argues that the undisputed evidence

9    demonstrates that plaintiff cannot satisfy the second or third element. The undersigned agrees as

10    to the second element and concludes summary judgment should be granted in defendant's favor

11    on this claim.

12        To demonstrate that he was a qualified individual, plaintiff bears the burden of proof to

13    show that he could perform the "essential duties" of his job with or without accommodation.

14    Green v. State of California, 42 Cal. 4th 254, 266 (2007). "FEHA does not prohibit an employer

15    from discharging an employee with a disability who is unable to perform his or her essential

16    duties even with reasonable accommodations." Arthur v. Gallagher Basset Servs., Inc., No. 09-

17    cv-4882 SVW (CWX), 2009 WL 10698381, at *4, 2009 U.S. Dist. LEXIS 150610 (C.D. Cal.

18    Oct. 27, 2009), citing Cal. Gov. Code § 12940(a)(1). In other words, there is no obligation for an

19    employer to retain an employee who is unable to perform the essential duties of the job. Id.

20    (explaining that "the Legislature has never indicated the intent to compel an employer to employ

21    such a person who could not perform the essential job duties with or without reasonable

22    accommodation.").

23        The undisputed facts demonstrate that plaintiff could not perform the essential duties of

24    his job, with or without accommodation, at the time of his termination and for approximately a

25    year thereafter. Plaintiff himself testified that he was completely unable to work from the time

26    that he requested leave in November 2020 through early 2022—over a year after the date Dr.

27    Hessenthaler indicated that he would be able to return to work. Paez Dep. at 17:7-16, 19-1-5. As

28    noted above, plaintiff's last day of work was October 31, and his leave beginning November 3,

2020 was approved based on the medical certification completed by his treating psychiatrist, Dr. Hessenthaler.  Paez Dep. at 46:9-21; Hessenthaler Dep. II at 11:15-22.  Dr. Hessenthaler's certification expressly stated that Paez was "unable to complete all functions during absence." Hessenthaler Dep. I at 12:6-19, 33:8-15; Ex. 10 (FMLA Certification of Healthcare Provider). Paez agreed with his doctor's assessment that he was unable to perform his job at that time.  Paez Dep. at 47:23-48:2.

Plaintiff argues that there is a disputed issue of material fact as to his ability to work because at the time of his termination on January 22, 2021, he had made substantial progress in his treatment, and his termination exacerbated and lengthened his disability.  ECF No. 24 at 11. 12.  Essentially, plaintiff argues that but for his unlawful termination, he would have been able to return to work, full time, on March 1, 2021.  Id. at 12.  Contrary to plaintiff's assertion, this conjecture does not create a genuine issue of material fact; instead, it is the kind of metaphysical doubt about the facts that is insufficient to withstand a motion for summary judgment.  See Matsushita, 475 U.S. at 586.  In addition to plaintiff's admission regarding his inability to work long after his termination date, plaintiff stated that he received of EDD disability benefits through the State of California from October 2020 to October 2021; these benefits require that a recipient be totally disabled.  Paez Dep. at 18:11-19.  Plaintiff's well documented, extended inability to work, with or without accommodation, both before and after his termination, undercuts any claim that but for his termination plaintiff would have been capable performing his work duties.  The undersigned agrees with defendant that, because plaintiff could not work at the time of his termination and remained unable to return to work for many months after his termination, he has not stated a prima facie case of disability discrimination under FEHA.

Because the record demonstrates a failure of proof on an essential element of plaintiff's case, see Celotex, 477 U.S. at 323, the undersigned recommends that summary judgment be GRANTED in defendant's favor on this claim.[1]

---

[1]  Defendant also contends that plaintiff cannot state a prima facie discrimination claim because he does not satisfy the third element: he was not discharged because of his disability.  ECF No. 22-1 at 14-16.  Because plaintiff did not establish the second element of a prima facie FEHA discrimination case, the court need not reach this issue.

1           b.  Failure to Accommodate (Government Code §12940(m))

2           Defendant seeks summary judgment in its favor on plaintiff's failure to accommodate

3    claim.  ECF No. 22-1 at 17-22.  This portion of FEHA declares it an unlawful employment

4    practice for an employer "to fail to make reasonable accommodation for the known physical or

5    mental disability of an applicant or employee."  Government Code §12940(m).  "The elements of

6    a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the

7    plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed

8    to reasonably accommodate the plaintiff's disability."  Scotch v. Art Inst. of California, 173 Cal.

9    App. 4th 986, 1009-10 (2009).  "[A]n employer is liable under section 12940(m) for failing to

10   accommodate an employee only if the work environment could have been modified or adjusted in

11   a manner that would have enabled the employee to perform the essential functions of the job."

12   Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 975 (2008).  "[T]he burden of

13   proving ability to perform the essential functions of a job with accommodation [is] placed on the

14   plaintiff."  Id.

15          Here again, for all the reasons set forth above, defendant is entitled to summary judgment

16   because the undisputed evidence makes clear that plaintiff was not qualified to perform the

17   essential functions of his position, with or without accommodations, at the time of his termination

18   and for nearly a year thereafter.  Plaintiff argues that his requested accommodation was a finite

19   period of leave, and that it is a disputed fact whether he would have been able to resume his work

20   if that accommodation been granted.  ECF No. 24 at 19.  For the reasons now explained,

21   however, a rational jury could not conclude on this record that a finite leave was an available

22   reasonable accommodation that would have allowed plaintiff to return to work.  See Matsushita,

23   475 U.S. at 587.

24          A "finite period of leave constitutes a reasonable accommodation, 'provided it is likely

25   that at the end of the leave, the employee would be able to perform his or her duties,' and that the

26   leave does not cause the employer undue hardship."  Shirvanyan v. Los Angeles Community

27   College Dist., 59 Cal.App.5th 82, 99 (2020) (citation omitted).  In Shivanyan, the plaintiff was

28   employed as a kitchen worker, and was diagnosed with carpel tunnel syndrome in 2014.  Id. at 89.

                                              14

Plaintiff initially reduced her work hours because of pain.  Id.  In December of 2015, plaintiff injured her shoulder at work and was issued a medical release by her physician through March 6, 2016.  Id. at 91.  The medical release was delivered to her employer by plaintiff's daughter in early January of 2016.  Id.  Plaintiff never returned to work.  On an appeal from a judgment following a jury verdict in plaintiff's favor on an FEHA failure to accommodate claim, the California Court of Appeal assessed whether "reasonable accommodations" were actually available for plaintiff's carpal tunnel and shoulder injuries, which were not differentiated with respect to liability at trial.  Id. at 87.  The appellate court held that a finite leave of absence was potentially an available reasonable accommodation for plaintiff's carpel tunnel injury, relying on testimony from plaintiff's doctor that a cumulative trauma injury like carpel tunnel can be eliminated through approximately two months of rest and treatment, after which a patient can return to customary work.  Id. at 99.

In contrast, the court found that no evidence suggested that a finite leave would have been a reasonable accommodation for the shoulder injury.  The Court explained, "[w]hen [plaintiff's doctor] initially wrote Shirvanyan's medical leave note suggesting Shirvanyan could return to work in a matter of months, [the doctor] was unaware of the extent of Shirvanyan's shoulder injury.  [Another physician,] Dr. Berg[,] later concluded, based on additional diagnostics, that this injury still prevented Shirvanyan from returning to work at the time of trial, over two years later.  Neither Dr. Berg nor any other witness offered any specific time by which Shirvanyan's shoulder injury would no longer prevent her from returning to her work at the center.  Thus, the evidence does not support that a 'finite' term of leave was an available accommodation."  Id. at 99.  In reaching its conclusion, the Shirvanyan court took the reality of plaintiff's condition into account, considering not only her condition at the time her employment ended but the trajectory of her condition thereafter.

Here, the evidence is clear that a finite leave of absence was not an "available accommodation" under the circumstances, and plaintiff has not identified any alternative accommodation that would have enabled him to remain employed by defendant.  Though plaintiff argues that there is "much evidence that Plaintiff likely would have been able to return to work

15

when he requested a finite extension of his leave of absence," he does not actually point to any

such evidence, and instead relies instead on conjecture.  ECF No. 24 at 19.  For example, plaintiff

argues that the extension request was made upon the assessment of his doctor as to when plaintiff

could return to work.  Id.  This position is undercut by Dr. Hessenthaler's testimony; while the

doctor estimated that the earliest plaintiff would be able to return was March 1, he confirmed

there was never any guarantee, stating he believed there was a "higher likelihood" that this return

date would work given Paez's response to treatment.  Hessenthaler Dep. II at 17:11-14.  Further,

like the court in Shivanyan, the undersigned must take reality into account: plaintiff admits and

the evidence makes clear that he was, in fact, fully medically disabled and completely unable to

work from the time that he requested leave in November 2020 through early 2022—around a year

after the date of Dr. Hessenthaler's estimation and his employment termination.  Paez Dep. at

17:7-16, 19-1-5.  On this record, no rational jury could find that a reasonable accommodation was

available to plaintiff in this case.  Accordingly, summary judgment should be GRANTED in

defendant's favor.

Plaintiff moves for summary judgment on defendant's asserted affirmative defenses of

hardship and business necessity.  ECF No. 15 at 15-19.  Because the court finds that defendant is

entitled to summary judgment on plaintiff's failure to accommodate claim without having to

employ these defenses, it is recommended that plaintiff's motion be DENIED.

    c.   Failure to Engage in Interactive Process (Government Code §12940(n))

Plaintiff moves for summary judgment that defendant failed to engage in a timely, good

faith, interactive process as required by FEHA before terminating his employment.  ECF No. 15

at 10-15.  Defendant also moves for summary judgment in its favor, asserting that plaintiff did not

identify any reasonable accommodation that would have allowed him to perform the essential

functions of his job.  ECF No. 22 at 2.  "The 'interactive process' required by the FEHA is an

informal process with the employee or the employee's representative, to attempt to identify a

reasonable accommodation that will enable the employee to perform the job effectively."  Scotch,

173 Cal.App.4th at 1013.  "The employee must initiate the process unless the disability and

resulting limitations are obvious."  Id.  "Although it is the employee's burden to initiate the

process, no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider an accommodation." Id. (citations omitted).  However, courts have held that a plaintiff cannot prevail on an interactive process claim where no accommodations were available, and the process was guaranteed to be futile.  Swonke v. Sprint Inc., 327 F. Supp. 2d 1128, 1137 (N.D. Cal. 2004) ("The Court cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile."); Zarco v. VWR Int'l, LLC, No. 20-CV-00089-HSG, 2021 WL 1927528, at *7, 2021 U.S. Dist. LEXIS 91833 (N.D. Cal. May 13, 2021 )(rejecting failure to accommodate claim in light of medical evidence that plaintiff was unable to work with no definite return date).  In short, a plaintiff cannot prevail on an interactive process claim unless he can identify an actual, available accommodation that could have arisen from the process and allowed plaintiff to resume employment.  Scotch, 173 Cal. App.4th at 1018 ("[O]nce the parties have engaged in the litigation process, to prevail, the employee must be able to identify an available accommodation the interactive process should have produced[.]").

For all the reasons set forth above with respect to plaintiff's other claims, defendant is entitled to summary judgment on this claim because it was not required to engage in a process that was guaranteed to be futile.  Plaintiff does not identify any accommodation other than a leave of absence, and plaintiff's own testimony and medical history make clear that this accommodation would not have enabled a return to work.

The court agrees with defendant that Shamir v. SCCA Store Holdings, Inc., No. CV 13-6672 ABC (ASX), 2014 WL 12597151, at *6, 2014 U.S. Dist. LEXIS 206317 (C.D. Cal. June 9, 2014), is instructive.  In Shamir, plaintiff had several leaves of absence with projected return dates that were extended based on her medical provider's indication that she could not return to work.  Id.  After the plaintiff's protected leave was exhausted, she sought more leave as further accommodation.  Id.  As in this case, at no time did plaintiff ever receive an actual clearance to return to work.  Id.  As in this case, the record reflected no accommodation other than more leave. Id.  And, as in this case, the plaintiff argued that the employer should have contacted her while she was on leave to offer alternatives.  Id.  The court in Shamir held that because the plaintiff was never cleared to work, the defendant was not obligated to further engage in the interactive

1   process.  Id.

2          In this case, defendant was entitled to rely on the doctor's assertion that plaintiff was

3   unable to work at all, and it had no obligation to continue engaging in an interactive process that

4   would have been futile.  As set forth above and taking into account the reality of the length of

5   plaintiff's inability to perform any work at all, it is clear from the evidence that any interactive

6   process would not have resulted in implementing an accommodation that would have enabled

7   plaintiff to return to work.  The undersigned recommends that summary judgment be GRANTED

8   in defendant's favor.

9          d.   Retaliation (Government Code §§12940(h), (i), and (m))

10         "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1)

11  he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse

12  employment action, and (3) a causal link existed between the protected activity and the

13  employer's action."  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (Cal. 2005).  When a

14  defendant seeks summary judgment on a plaintiff's retaliation claim under FEHA, California

15  follows the McDonnell Douglas burden shifting analysis "to determine whether there are triable

16  issues of fact for resolution by a jury."  Loggins v. Kaiser Permanente Int'l., 151 Cal. App. 4th

17  1102, 1108–09 (Ct. App. 2007). "In evaluating a legitimate nondiscriminatory reason, the

18  ultimate issue is simply whether the employer acted with a motive to discriminate illegally. Thus,

19  legitimate reasons in this context are reasons that are facially unrelated to prohibited bias, and

20  which, if true, would thus preclude a finding of discrimination."  Lawler v. Montblanc N. Am.,

21  LLC, 704 F.3d 1235, 1243 (9th Cir. 2013) (emphasis omitted) (internal quotations and citation

22  omitted).

23         Plaintiff fails to establish a prima facie case of retaliation under FEHA because he

24  presents no evidence whatsoever that there is any link between the adverse employment action at

25  issue (his termination) and his engagement in a protected activity (seeking a disability

26  accommodation).  Plaintiff was terminated from his position when Walburn denied the request for

27  additional continuous leave, and the time of termination, plaintiff was advised that he was eligible

28  for rehire.  Paez Dep. at 12:18-21; ECF No. 22-4 at 62 (Termination Letter); Walburn Dep. at

23:14-17.  The decision to end Paez's employment was made by Walburn, and approved by Ret Grady ("Grady"), the Senior Director of Human Resources ("HR") Operations.  Walburn Dep. at 14:7-10; Grady Dep. at 21:10-22:1. Walburn explained that if Paez had been able to return on January 22, he would not have been discharged.  Walburn Dep. at 46:10-20, 47:1-4.  Plaintiff did not apply for re-hire.  Paez Dep. at 66:24-68:9.  The facts that ASO would have retained plaintiff had he been able to work, and affirmatively advised Paez that he was eligible for rehire, both undermine any inference of retaliatory animus, as do Paez's repeated earlier grants of leave as accommodations.  In other words, the evidence demonstrates that the request for accommodation was not the reason for Paez's discharge; rather, the need to have an employee present and the work completed was the basis, and no causal link exists between his discharge and any protected conduct.

Plaintiff has offered no evidence to dispute this legitimate reason for his discharge.  He expressly denied that anyone ever made negative or derogatory comments to him regarding his condition or his leave and stated that there were no such comments on the call informing him of his discharge.  Paez Dep. at 67:6-13.  There is no evidence of a retaliatory animus, negative comments or conduct, adverse consequences, or anything else to support a finding of pretext or retaliation.  Accordingly, the retaliation claim fails, and the undersigned recommends summary judgement be GRANTED in defendant's favor.

e.   Failure to Prevent and Remedy Discrimination (Government Code §12940(k))

Defendant moves for summary judgment on plaintiff's derivative claim of failure to prevent and remedy discrimination under FEHA.  To state a claim under Section 12940(k), plaintiff must show that: (1) he was subjected to discrimination or retaliation; (2) ASO failed to take all reasonable steps to prevent discrimination or retaliation; and (3) this failure caused plaintiff to suffer injury, damage, loss, or harm.  Leland v. City & County of San Francisco, 576 F.Supp.2d 1079, 1103 (N.D.Cal.2008).  Defendant is entitled to summary judgment on this claim because, as set forth above, plaintiff cannot meet the first element as he cannot demonstrate discrimination or retaliation.  Suit may not be maintained for violation of the duty to prevent discrimination if plaintiff has not actually suffered any employment discrimination or retaliation.

19

1   Lara v. DNC Parks & Resorts at Tenaya, Inc., No. 1:14-CV-000103-LJO, 2015 WL 4394618, at

2   *9, 2015 U.S. Dist. LEXIS 92790 (E.D. Cal. July 16, 2015).  Because plaintiff cannot establish at

3   least one essential element of this claim, summary judgment should be GRANTED in favor of

4   defendant.

5          B.  Wrongful Termination in Violation of Public Policy

6          Defendant moves for summary judgment in its favor on plaintiff's claim for wrongful

7   termination in violation of public policy fails because it is premised on an alleged violation of

8   FEHA, and for the substantive reasons set forth above, he cannot demonstrate discriminatory or

9   retaliatory discharge under FEHA.  AS a result, defendant argues, plaintiff's claim of wrongful

10  discharge in violation of public policy claim likewise fails.  See Keshe v. CVS Pharmacy Inc.,

11  No. 2:14-cv-08418-CAS-MANx, 2016 WL 1367702, at *9, 2016 U.S. Dist. LEXIS 46782 (C.D.

12  Cal. Apr. 5, 2016), aff'd., 711 F. App'x 396 (9th Cir. 2017) (claim fails because it duplicates the

13  first claim, pled as a common "violation of public policy" claim but in fact premised on the

14  alleged violation of FEHA); Calderon v. Fresenius USA, Inc., No. 2:07-cv-869-PS-GJE-MX,

15  2022 WL 3012180, at *17,  2022 U.S. Dist. LEXIS 96707 (C.D. Cal. Feb. 15, 2022) (because

16  plaintiff's FEHA claim fails, his claim for wrongful termination in violation of public policy

17  based on FEHA also fails.").  The undersigned agrees that because plaintiff's FEHA claims of

18  discriminatory and retaliatory discharge fail, his claim of wrongful discharge in violation of

19  public policy also fails.  It is recommended that summary judgment be GRANTED in defendant's

20  favor in this claim.

21                              **V.     Conclusion**

22         Accordingly, for the reasons explained above, IT IS RECOMMENDED that defendant's

23  motion for summary judgment (ECF No. 22) be GRANTED.  It is further RECOMMENDED that

24  plaintiff's motion for summary judgment (ECF No. 15) be DENIED.  Judgment should be entered

25  in favor of defendant and this case should be closed.

26         These findings and recommendations are submitted to the United States District Judge

27  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

28  after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations."  Any response to the objections shall be filed with the court and served on all

parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

objections within the specified time may waive the right to appeal the District Court's order.

Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

(9th Cir. 1991).

IT IS SO ORDERED.

DATED: December 9, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

21